Our next case this morning is Whale Family Investments v. Concord01. Counsel, you may proceed. Oh, I should mention the case number 24-1011. Good morning, and may it please the Court. Steve Knight on behalf of the Plaintiffs' Whale Family Investments in Ransom Capital. Plaintiffs, as minority interest holders in this case, allege that the defendants, as the majority interest holders, voted to amend the company agreement in violation of its terms to enable them to forcibly redeem the plaintiff's shares for an artificially deflated amount. Yet the district court determined that plaintiffs lacked standing to pursue their claims because they did not trace their injuries to the defendant's conduct. This Court should reverse. The fairly traceable element of constitutional standing has its origin in public law cases. Could I just ask you at the get-go, before we get to that element of standing, as we know, there's three elements, injury and causation and regressibility. And I'm just wondering on the first element what your theory of injury is for purposes of your standing argument. Is it that your clients didn't get paid enough, or is it that they lost their power on the board as a result of the amendment, or is it both? The reason I'm asking is that in looking at your complaint, the breach of contract count seems to emphasize the change in the structure of the board a little bit more than the damages or the alleged underpayment. So what's the injury to start out with, and then we can get to traceability. So I think you're right in reading the complaint. It's broad and it alleges several injuries. I think the first and foremost injury is the underpayment, the undervaluation of their shares. And in that regard, I think that's undisputed. I mean, even the district court said plaintiffs have asserted an injury for purposes of standing by claiming that their Class B units were forcibly redeemed for less than their actual value. And I think that in the same part of the opinion that the district court judge, they pointed out that the defendants don't even dispute the injury element. So first and foremost, assuredly, we're complaining that we were undervalued. But I think there's also some issues in this case as to whether they even had the right to forcibly redeem the shares. If you remember, the 2011 agreement under paragraph 6.1, it has a reference to redeeming somebody's units based on a majority vote. It has a reference to that. But what's significant is there's not an actual provision in the 2011 agreement to facilitate a forced redemption, which explains in part why they added or amended the agreement to add the new paragraph 4.8, which adds a whole new mechanism to do it, including giving themselves the ability to unilaterally set whatever price they deem is fair and reasonable. Okay. I want to keep focused on the standing elements. And the reason I'm asking is if it's underpayment or something about changing your client's status on the board, that may affect how to look at the traceability element. So let me get to the traceability or the causation element. And there are a lot of cases that lay that out, but I'm just looking at Lujan, which describes it as that element is the injury has to be fairly traceable to the challenged action of the defendant. What are you claiming to be the quote-unquote challenged action? The challenged action is the amendment of the 2011 agreement in a manner that violates its important safeguards. The 2011 agreement says that whereas the majority of the requisite holders can vote to amend an agreement, they cannot do so in a manner that would adversely and disproportionately affect Class B unit holders without securing the majority of their consent. So why wouldn't the challenged action be the carrying out of the redemption itself? I think that that's part of it because they... But that isn't what you just said. I mean, I really am interested in what we're looking at here in terms of the challenged action. Is it that they amended the 2011 agreement, or is it that they redeemed the units at a lower price? It is that they realized that the 2011 agreement did not have a mechanism for them to forcibly redeem the shares, and even if it did, as they claim it does, it doesn't have a provision that allows them to unilaterally set the price. They realized that. What we've alleged is that in 2022, by the time the value of this company skyrocketed, they wanted to get rid of the majority of the Class B unit holders, my clients, but they needed a mechanism to do it. The 2011 agreement didn't give them a mechanism. So they voted to amend the agreement for a specific purpose of buying us out in a manner that allows them to not give us the equity interest in the skyrocketed value, but to allow them to unilaterally set the price. Let me make sure, again, on the challenged action. They appear to be saying that they could do everything they did under the 2011, or maybe the district court said this too, under the 2011 agreement, with or without the amendment. Is that how you understand their argument? I'll say that's how I understand their argument, but the district court's holding is not that broad. All that the district court found is that they could set the same price under either agreement, and I'm certainly going to get to that in my argument because that's just fundamentally incorrect, and it also begs the question, if they could do everything that they did under the 2011 agreement, why would they amend the agreement? I mean, they did this for a specific purpose, and here's more precisely what they did. They realized that they wanted to get rid of us and not give us our equity share. They needed a mechanism to put that in place to allow them to set the redemption price. So they voted to amend the agreement, and what did the amendment do? Becca, I don't really think, I think you're starting too far ahead. Isn't it really that they, because the 2011 agreement required Class B approval to make any amendments to that agreement that would adversely and disproportionately affect the holders of the Class B units. Isn't that really what this case is all about, is they amended without Class B approval? Which renders the amendment invalid, which gives rise to a broad range of injuries, including perhaps ongoing equitable distributions. But everything follows from that amendment that you say was improper under the 2011 agreement. Yes, and to sort of support your point, the reason that they needed the approval of the majority of the Class B units is because the amendment does adversely and disproportionately affect the Class B units. They amended even without trying to get approval, which obviously we wouldn't have offered them the approval. We are the majority owners. We're not going to allow you to unilaterally set our redemption price at a figure that we think is artificially low. So they go forward and they amend the agreement, or purport to amend the agreement. They eliminate the board seat reserved for a Class B unit holder. They add a brand new mandatory redemption clause that didn't exist in 2011 that gives them the ability to redeem plaintiff's units, quote, on such terms as the board, now only occupied by them, determines to be fair and reasonable. And then they did one other thing that's very important. The 2011 agreement had a definition of fair market value. And the definition of fair market value said that it applies in connection with, you know, various assets of the company, including equity interests. Well, what is fair market value? Well, it's the fair market value. It's the equity interest. That's how the 2011 agreement defined fair market value in connection with our interests. So they saw that as a problem to forcibly redeem us for something less than the fair market value. So what did they do? This is the next thing. They added a second sentence to that definition that says, However, this definition doesn't apply to any forced redemption under Paragraph 4.8. Why did they do that? Well, they had to in order to give any teeth or bite to their mandatory redemption provision that now purports to give them the sole ability to determine what is fair and reasonable value for our shares. So I submit that, oh, and then part of the story, I guess, is going in the correct order. After they carried out this purported amendment of the agreement, one month later my clients get their notices that we're forcibly redeeming these shares and here's the price and, by the way, we're allowed to do this under the new agreement. So the timing also demonstrates that what we've alleged in our complaint, it supports it. We said that the company's value skyrocketed. They wanted to be able to get rid of a substantial holder, my clients, who had the majority interest of the Class B units, get rid of them, set an artificially low price, go sell the company, and that all this equity is now distributed primarily to them. That was what we alleged they did. That caused our injury, the undervaluation of our shares, and everything else that flows from an illegal amendment of the agreement. Now, let me just ask you, going back, you summarized what the district court said about 2011, the amendment in 2022, and you disagree with the court's conclusion, but let's just assume for the sake of discussion that the district court got it right. Wasn't it interpreting those agreements and coming to that conclusion as a matter of the merits and not so much addressing the traditional standing elements? Absolutely, Judge, and that was going to be the first report. Going back to what I said earlier, that the court's holding was not as broad as what you described, but the court actually held is that they could unilaterally set the price under the 2011 and the 2022, and I submit that that is fundamentally wrong. That's the whole reason they did the amendment is to change the definition of fair market value. They had to get rid of that. Well, again, I think you have to go back to I think what your primary allegation is is that they amended the agreement in a manner that would adversely and disproportionately affect the Class B units, so that's really the merits question, and if that's the merits question, the district court basically answered that question by saying, yeah, it doesn't adversely and disproportionately affect Class B units because this could have all happened under the 2011 agreement, so it really looked to the merits to me of that question about disproportionate and adverse effect. And the error is not only that. It's compounded by the fact that when the court delved into the merits review, its merits review is erroneous because they are not at liberty to set a unilateral fair and reasonable price under the 2011 agreement. That's the whole reason they amended it. Well, the question the court was looking at is what did you plead about that, and she says you didn't plead as the way I understood it. Well, Judge, on that point, I want to reserve two minutes. That means I've got 43 seconds to quickly point out. Paragraph 28, we said defendants removed any provision that would assure that any buyout or redemption would occur at fair value. We pled we're entitled to fair value. Moreover, here's another one. You didn't cite the provisions of the contract, the 2011 agreement, I mean, but you did plead fair value. Here's another one, though. The redemption prices were significantly below fair market value of plaintiff's units under standard valuation methodologies considering the company's assets, financial position, anticipated future earnings, et cetera. So, in other words, we pled that what we are entitled to is an objective measurement of fair value or fair market value, and that's the reason they amended it. So for the court to hold What paragraph is that? What I just read is paragraph 47 of the complaint, Judge. It's found at appendix page 24. I see it. So unless you have any other questions, I want to reserve just a couple minutes for rebuttal. Thank you, sir. Thank you. Thank you. Thank you. May it please the court. The Appellees are seven entities and two individual trustees who collectively own or did own a majority of the units in Concord Energy Holdings, LLC. The Appellees own or owned both Class A and Class B shares in the company, which is an important point because when we come to provisions of the agreement, referring, for example, to the requisite holders, we see references to the two classes voting together. It is undisputed, it is indeed visible on the face of the attachment to the complaint, that the Appellees always had enough with both classes combined to bring a requisite holder approved action forward. So the notion that it's A against B is not quite accurate. Counsel, did the 2022 amendments adversely affect the Class A holders in any way? Yes. So the 2022 amendments, it's not a monolith. Many things were done throughout the agreement. And the mandatory redemption provision, the Section 4.8 that we've heard about in the complaint, it's called oppressive, refers on its face to Class A or Class B holders. It explicitly refers to both classes in 4.8, which is the challenged provision, which is the heart of going to Judge Mathison's question and what we heard earlier about, well, was the redemption really the problem? And the answer has been in the briefs, but not in the complaint. But the answer has been in the briefs and this morning, well, the redemption is the problem. And the redemption was done as part of this 4.8, which then backs back up into what they say is disproportionate and adverse. Again, 4.8 on its face applies to everyone. But the redemption only applied to the Class B holders. The redemption at issue in this case only applied, I believe, to the appellants. I mean, there are Class B holders among my clients as well. But it only applied to Class B holders, regardless of which side of the V they're on. No, Your Honor. I believe only that the redemption was as to two individual unit holders who only held Class B units. So only the Class B, so I'm right. But not all the Class B. Sure, but only two Class B. No Class A redemptions were forced here. I believe that is accurate. It is not alleged and there is, of course, no record. Let me ask you this also. If, let's say, in this forced redemption, the Class A holders were to say, we value your units as one penny. Would the Class B holders have standing to even challenge that determination? If they filed a complaint, including the allegations to substantiate that, yes. I would expect to see in that case a complaint about not to look too far ahead. And it is important that I return to the fact that this was a dismissal I want you to answer his question. Okay, the question is that I would expect to see a different complaint than was filed. I would expect to see a complaint talking about legal constraints on exercise of discretion. If the amendments per se were being challenged, I would expect to see an explanation of how the discretion exercisable under the pre-amendment agreement was different than the discretion exercisable post-agreement. I do not agree with the conclusion, by the way, nor is it alleged in the complaint, that there was not a redemption right under the agreement pre-amendment. So we're in a situation where it has not been alleged you couldn't redeem us pre-amendment, and it has not been alleged you would have had to pay us more pre-amendment. You can get that from various provisions of the complaint, for sure. The one he pointed to, paragraph 47, talks about the fair market value, significantly below the fair market value, and it says plaintiffs' units under standard valuation methodologies, which in this case would be Delaware law applies when there aren't any valuations in the contract, which there weren't in the 2011 agreement, and Delaware law would say it's fair market value. So you could imply all of that from paragraph 47, certainly, or infer it. And then there are several references to the fact that this redemption should have occurred at fair value, page 21 of the complaint, page 26, again, below fair market value, page 23, paragraph 42, numerous references to make it clear that what they believed they were entitled to under the 2011 agreement was fair market value. And the district court didn't seem to recognize that. Respectfully, Your Honor, there is some jumping around between fair value and fair market value in the complaint, which may or may not be intentional, which goes again to the failure to meet even, frankly, a notice pleading standard. If I may address paragraph 47, which is the one my friend read earlier, this is actually the only thing in the complaint about being underpaid, that we got less than we should have under some standard. And to be clear, I am not taking mere references to oppressive or bad as sort of an allegation that we were entitled to more money. The only place we see we were entitled to more money is in paragraph 47, where we see, as discussed, the redemption prices were significantly below the fair market value of plaintiff's units under standard valuation methodologies. I don't want to belabor this point, but paragraph 59 also says, alleges that redemption was demanded of plaintiff's units at a value that is considerably below fair market value. So there's one other place. That's absolutely correct, Your Honor. Indeed, there are multiple instances of fair market value, including a section devoted to the change in the definition, relevance to that unclear. But there are also, then, these other references to fair value, which is the watchwords we see in the Delaware cases to which Judge Moore is referring. As the plaintiff here, to the extent that anyone's entitled to favorable inferences, don't they get the benefit of that at this point? For a dismissal without prejudice? I don't know that that's true. Well, we're working off the complaint. I mean, that's all we can work off of here. That's all the district court could. Correct?  I guess by also incorporating the agreements. Yes, the agreements are properly considered. They don't get the benefit of any inference. Is that what you're saying? A reasonable, I mean, the pleading standard, of course, is plausible inferences. So, yes, I would say plausible inferences. If I could return just a moment to what Judge Moore asked about, well, then you look to Delaware law and you see what happens in the case of silence. If I may, just going back again to the notice provided or not by the complaint. And again, we are not arguing futility or with prejudice. And a lot of the hypothetical questions to me would have to be answered definitively if that's what we were dealing with. But when we look at the Delaware cases that we're supposed to have sort of got by osmosis, perhaps, through the first complaint, you know, the first one they talk about is Hillman. Those are in the briefs in this court. Oh, and first of all, the complaint says nothing about silence or the ramifications thereof of the 2011 agreement as to the ability to redeem or the price to redeem. We certainly have heard it in this court. There's nothing about that in the complaint. Then if we look now, having the benefit of my friend's briefs in this court, we see first we have the Hillman case, which was the case decided under the Delaware Limited Partnership Act. We're not dealing with partnership. Then we have Jemaine Associates, which is an unpublished case. You're getting way into the weeds on this. We're talking about whether this complaint is sufficient here to assert that there was, you know, fair market value is what they expected on the redemption under the 2011 agreement. We don't make those – we don't look to intricacies of Delaware law to decide that. I'm just saying you can read the complaint as sufficient notice that what they thought they were getting was fair market value under the 2011 agreement. I mean, it – I would – You're kind of convincing me that this was a merits determination. Well, I would say to the extent it is, if the court were to conclude that it was properly dismissed again without prejudice under 12b-6 – Well, it wasn't. It was dismissed under 12b-1. But both were argued to the district court. I understand. It was dismissed under 12b-1. Are you saying that they could refile a new complaint tomorrow because it was dismissed without prejudice? Yes. And cure everything that you're claiming was not right here? I can't speak to the extent of the cure, but I am surprised – Attempt to cure. I am surprised we are here. I am surprised there was not an attempt to file an amended complaint and connect some of the dots. And so I do feel as though because we are here, it seems as though perhaps more had happened than did. And one other thing about the mismatch, going to Your Honor's initial question about traceability itself, there's all kinds of – the bulk, I would say, of the prayer for relief is about undo all the amendments, one of which, as I just mentioned, refers to both on its face. I'm not asking the court to decide its merits. But when we look at what's pled, it's undo all the amendments, put us back in as unit holders, and give us distributions without giving back the $32 million. I mean, there was no tender. There was no pleading that any kind of redemption or rescission was attempted. So we look at the prayer for relief over here, and we see all the amendments should go, we should be back in, and were underpaid under standard methodologies. Then we look at the challenge conduct, and we see the amendments. So is it an underpayment case? In which case, where are the allegations that they're free to make in a new complaint about, here's what we would have had under 2011, here's what we did get, and here's how the two were different, and here's how we think you can ignore the amendment. This particular amendment 4.8. Counsel, the prayer for relief does ask for damages. Yes. What you're talking about is undoing the agreement somehow. That's not damages. That's more in the nature of injunctive relief. They are asking for damages. But let me just ask you this. If I understand your argument in part, correct me if I'm wrong, but you're arguing that what happened here could have been done under the 2011 agreement without the amendments, correct? I think it would be more precise to say that I am arguing that the complaint is devoid of allegations as to how it could not have, nor respectfully do I believe that that is self-evident. Well, okay. Wait. We're talking about standing. Yes. Why was there no causation? Isn't it because you could have done everything under 2011 without the amendments? It's because they don't allege otherwise and yes.  Then here's my question. I looked at the redemption, and the notice of redemption states that it was based on the 2022 amendment. So why doesn't that alone show that they can trace this to the 2022 amendment when the notice of redemption relies on the 2022 amendment? It was done pursuant to the amendment. But you can have, I mean, again, if the damage is, if we're not talking about rescission, if the damage is under the agreement. No, we're talking about standing. Correct. Why doesn't that, why isn't that enough to allege that the 2022 amendment caused whatever injury they're talking about here? Because if the same thing could have happened with or without the amendment. It could have, but that isn't what your client did. The notice of redemption says 2022 amendment. How do you get away from that? Because, respectfully, Your Honor, the alleged injury for purposes of the damages claim is underpayment. And so, again, the amendment is not a monolith and it is not about just 4.8. So, yes, the redemption was accomplished pursuant to the then current iteration of the agreement. If the allegation is we were underpaid, then there needs to, the dots need to be connected that we would not have been, quote, underpaid, but for the amendment. I mean, suppose the amendment had simply, one of the things they did do was change the foreign selection clause. Okay. I'm going to ask you one other question. All right. Let's assume that your interpretation of all this is the correct one, but there's still this temporal issue. And that is the amendment happens. And then shortly after the redemption happens, why shouldn't the plaintiffs be able to come into court and prove whether you had to rely on the 2022 amendment or not? That the 2022 amendment was a causal factor, that it did prompt this action or it reinforced what your clients were able to do. And why isn't that enough? You may end up winning, but the question here isn't that. That's merits. Why isn't that enough for standing? So, first, they should be able to come into court because we're only talking about standing. Returning to the last question about why. No, I want you to answer this question. About the timing. It's a standing issue. Yes. Yes. If the timing alone, without an allegation that we were entitled to more money under thus and so provision of the agreement, is again insufficient. These are all ingredients of what could be a cognizable claim, which brings me back to I'm not making a futility argument. But respectfully, the dots are not connected in the complaint. I would submit, oh, may I just finish my sentence? Please do. Thank you. I would submit, indeed, that some of the wrangling that has happened both in the district court and in the briefs in here today is illustrative of the fact that it's really not clear what's being alleged and how the dots are connected. So we would ask that you dismiss the appeal for lack of jurisdiction or affirm the district court. Thank you. Thank you, counsel.  Just very quickly, I think it bears repeating what came out from the last session here, that this is the pleading stage. It's the very early parts of a case, and it's a breach of contract case. And I started my argument by saying this concept of lack of traceability seems oddly misplaced in a breach of contract case where the district court has already concluded and found that we have alleged damages. We've certainly traced them to them. I was looking in their appealese brief for a contract case that got dismissed on traceability. They didn't cite one. And I'm not aware of any in the country in the breach of contract setting. I will close with a case that was... Before you close, can I ask you, what I think counsel is pointing out here is that you've got some pretty big flaws in your merits arguments. And that's why they would like us to go ahead and take a look at this under 12B6. But because of the aggregating of the units, you don't have an argument, apparently, as to the adverse and disproportionate effect. And assuming they can make these amendments, which I think we're hearing here is that you may have had an opportunity to change your theory below. So on the 12B6, we responded to them. They moved 12B6 on very narrow grounds. All of their arguments are contrary to the legal authority that we put forth. All of our causes of action stand. And just in the last few seconds... And I hope I answered your question. I'm just saying, I mean, you... I'm just... Never mind. I used up your time. If the case is remanded, they can certainly file a summary judgment motion. We'll be happy to answer it. And we'll be off and running on the merits. But the court reached the merits, and it shouldn't have done so. Just lastly... Counsel, before you close, I have one more as well, which is I just heard your opposing counsel say that she's surprised we're here. So why didn't you just refile an amended complaint and sort of forego having to come up to us and get an answer to go back down? There was language in the order that struck me as though the court may not have permitted that. And I didn't want to forego the opportunity to appeal this decision because it is plainly wrong under the Constitution. And so the closing word is this is a breach of contract case. And what the Fifth Circuit said in the wake of a similar type of complaint is, and this is the RLI versus Roberts, and I think this case falls right within the same reasoning. RLI plainly has standing. It alleged the loss of money, injuring fact, caused by Roberts' breach of their agreement, traceability, that a court can remedy through damages and specific performance, redressability. This case is no different. We ask the court to reverse and remand. Thank you, counsel. Thank you. I think we're out of time. The case will be submitted, and counsel are excused. We'll go on to the next case.